NOT FOR PUBLICATION (Doc. No. 9)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | | |
|---|---|---|
| Carla SIMON, | : | |
| Plaintiff, | : | Civil No. 15–1698 (RBK) |
| v. | : | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the appeal of Carla Simon for review of the final determination of the Commissioner of Social Security ("Commissioner"). The Commissioner denied her application for Social Security Disability Insurance ("SSDI") benefits under the Title XVI of the Social Security Act. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

I.   BACKGROUND

On August 25, 2011, Ms. Simon filed a claim for SSDI benefits because she suffered from anxiety, depression, Irritable Bowel Syndrome (IBS), and panic attacks. Administrative Record ("Rec.") at 64. The relevant time period is January 1, 2009, when Ms. Simon first alleged disability, to December 31, 2012, the last date that Ms. Simon was insured. *See* Pl.'s Br. at 3. The Commissioner denied Ms. Simon's claim on April 13, 2012, and again upon reconsideration on May 29, 2012. *Id.* Ms. Simon requested a hearing before an administrative law judge ("ALJ"),

1

and the hearing was held on August 30, 2013. *Id.* On August 30, 2013, the ALJ decided that Ms. Simon could not receive SSDI benefits. *Id.* The Appeals Council denied Ms. Simon's request for review on October 28, 2013, and the ALJ's determination became the final decision of the Commissioner. *Id.* Ms. Simon filed a complaint in this Court on March 9, 2015. (Doc. No. 1).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ used the established five-step evaluation process to determine if Ms. Simon was disabled. *See* 20 C.F.R. § 404.1520. For the first four steps of the evaluation process, the claimant has the burden of establishing her disability by a preponderance of the evidence. *Ziransak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that she was not engaged in "substantial gainful activity" for the relevant time period. *See* 20 C.F.R. § 404.1572 (defining "substantial gainful activity"). Second, the claimant must demonstrate that she has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least 12 months. *See* 20 C.F.R. § 404.1520(a)(4)(ii) (explaining second step); 20 C.F.R. § 404.1509 (setting forth the duration requirement). Third, either the claimant shows that her condition was one of the Commissioner's listed impairments, and therefore she is disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii) (explaining the third step); *see also* 20 C.F.R. Pt. 404, Subpt. P., App. 1. Fourth, if the condition is not equivalent to a listed impairment, the claimant must show that she cannot perform her past work, and the ALJ must assess the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv) (explaining the fourth step); 20 C.F.R. § 404. 1520(e) (same). If the claimant meets her burden, the burden shifts to the

Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant is capable of performing based on her RFC, age, education, and work experience. *Id.*; 20 C.F.R. § 404.1520 (a)(4)(v) (explaining the fifth step). If the claimant can make "an adjustment to other work," she is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

At step one, the ALJ determined that Ms. Simon did not engage in substantial gainful activity during the period of January 1, 2009 through December 31, 2012. Rec. at 12. At step two, the ALJ found that Ms. Simon had severe impairments, which were cyclical vomiting syndrome (CVS), a major depressive disorder and an anxiety disorder.[1] *Id.* At step three, the ALJ noted that Ms. Simon did not suffer from one of the listed impairments that would render her automatically disabled. *Id.* At step four, the ALJ found that Ms. Simon's impairments were not equivalent to any listed impairment, and that although she could no longer perform any past relevant work, she had the RFC to perform a "full range of light work", with a few limitations.[2] *Id.* at 15. At step five, the ALJ found that there were many jobs in the national economy that Ms. Simon was qualified to perform based on her RFC, age, education, and work experience. *Id.* at 17. Accordingly, the ALJ concluded that Ms. Simon was not disabled during the relevant time period. *Id.* at 22.

---

[1] The ALJ found that Ms. Simon did not suffer from IBS, as alleged, because "there [was] a lack of treatment history for this and when the diagnosis was made, it appeared to be secondary to a bout of viral gastroenteritis." Rec. at 12.

[2] The ALJ found that Ms. Simon had the "capacity to perform at all exertional level; except [Ms. Simon] cannot work around heights. She cannot work around dangerous moving machinery. She can perform detailed and simple tasks, but not complex tasks. She would require low stress work (defined as involving fairly routine work and no fast production rate pace). She could only occasionally interact with the public. She would be off task 5% of the work day, in addition to normal breaks and lunch, due to symptoms." Rec. at 17.

## II.     STANDARD OF REVIEW

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak*, 777 F.3d at 610 (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). The often-used quotation for the standard is that substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g.*, *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

### III. DISCUSSION

The ALJ determined that Ms. Simon was not disabled within the meaning of the Social Security Act at any point during the relevant time period. This Court finds that substantial evidence supports the Commissioner's determination. The Commissioner's decision is therefore affirmed.

#### A. ALJ's Finding Regarding Residual Functioning Capacity

The ALJ's determination that Ms. Simon had the RFC to perform light, unskilled work is supported by substantial evidence. Once an ALJ finds that there is a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, an ALJ must evaluate, "the intensity and persistence of [the] symptoms . . . and determin[e] the extent to which [those] symptoms limit [the individual's] capacity for work." 20 C.F.R. § 416.929(c). When determining the RFC of an individual who suffers from a mental impairment, an ALJ should consider an acceptable medical source's opinion about the individual's "ability to carry out and remember instructions, and to respond appropriately to supervision, coworkers, and work pressures in a work setting." 20 C.F.R. § 404.1513(c). The ALJ found that Ms. Simon's medically determinable impairments could reasonably be expected to cause her alleged symptoms. Rec. at 18. The ALJ gave little weight, however, to some of the medical source's opinions and found that Ms. Simon's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible. *Id.*

The ALJ concluded that, during the relevant time period, Ms. Simon suffered from CVS, a major depressive disorder, and an anxiety disorder. *Id.* at 12. The ALJ found that Ms. Simon's CVS-related symptoms substantially improved and did not result in any limitations. *Id.* at 18–19. Contrary to Ms. Simon's assertions, the ALJ provided a sufficient explanation for this finding.

The ALJ noted that following Ms. Simon's hospitalization in August 2009, Ms. Simon had almost a two-year period without another episode. *Id.* at 18. Moreover, treatment notes from February 2012 show that Ms. Simon denied experiencing any CVS-related symptoms. *Id.* Therefore, substantial evidence supports the ALJ's finding that no limitations arose from Ms. Simon's CVS.

As to Ms. Simon's anxiety and depression, the ALJ found that Ms. Simon's alleged symptoms were contradicted by her testimony, which states that she sends text messages to her friends and sees her boyfriend several times a week. *Id.* at 19. The ALJ further noted that medical examinations indicate Ms. Simon's "immediate, recent and remote memory skills were intact; and she was able to follow simple and complex instructions, and she could manage her benefits." *Id.* An ALJ can discredit a claimant's testimony if it is inconsistent with other evidence. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 433 (3d Cir. 1999). However, an ALJ cannot rely only on non-medical evidence to contradict the claimant's subjective complaints of pain, "to the extent that the subjective complaints are supported by objective medical evidence." *Williams v. Apfel*, 98 F.Supp. 2d 625, 633 (E.D. Pa. 2000). The ALJ found that Ms. Simon's subjective complaints of symptoms resulting from her anxiety and depression were contradicted by her own testimony as well as medical evidence. Rec. at 19–20. Therefore, the ALJ's findings as to the limitations resulting from Ms. Simon's anxiety and depression are supported by substantial evidence.

The ALJ further considered the Kennedy Behavioral Health Services' finding that Ms. Simon has a serious impairment in social or occupational functioning, as well as Dr. Seifer's finding that Ms. Simon has a moderate impairment in social or occupational functioning. *Id.* An ALJ "may choose whom to credit" but "cannot reject evidence for no reason or for the wrong

reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993) (quoting *Harris*, 642 F.2d at 707). The ALJ gave little weight to the Kennedy Behavioral Health Services' finding of severe impairment because it was based on only one interview with Ms. Simon and other mental examinations indicated that Ms. Simon's symptoms were not severe at that time. Rec. at 19. The ALJ gave some weight to Dr. Seifer's finding of moderate impairment, but interpreted "moderate" to mean that Ms. Simon "has some problems, but generally she can function satisfactorily." *Id.* Contrary to Ms. Simon's assertions, substantial evidence supported the ALJ's determination of Ms. Simon's RFC.

B.    **ALJ's Finding Regarding Other Jobs in the National Economy**

The ALJ properly relied on the Vocational Expert's (VE) testimony to find that other work was available to Ms. Simon. The Commissioner must meet her burden to show that there is other work available to Ms. Simon by showing that "work exists in significant numbers in the national economy that [the claimant] can do." *Zirnsak*, 777 F.3d at 612 (citing 20 C.F.R. § 404.1560). The VE testified that Ms. Simon could perform a number of jobs, and that those jobs exist in significant numbers in the national economy.[3] Rec. at 21. The ALJ found that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles (DOT) and that Ms. Simon could successfully transition to other work, rendering her "not

---

[3] The VE testified that Ms. Simon was "able to perform the requirements of representative occupations such as order caller ((DOT citation number 209.667–014) 38,000 jobs in the United States and 1,118 in New Jersey) or as price marker ((DOT citation number 209.587–034) 49,615 jobs in the United States and 1,757 jobs in New Jersey) or as a cleaner ((DOT citation number 323.687–010) 97,553 jobs in the United States and 2,265 jobs in New Jersey)." Rec. at 21.

disabled." *Id.* at 22. Contrary to Ms. Simon's assertions, this finding is supported by substantial evidence.[4]

Ms. Simon argues that the hypothetical questions incorrectly excluded limitations resulting from Ms. Simon's CVS-related symptoms. Hypothetical questions posed to a VE must accurately portray the claimant's impairments. *Rutherford*, 399 F.3d 546, 544 (2005). The ALJ found no limitations resulting from Ms. Simon's CVS, and the ALJ supported that finding with substantial evidence. Therefore, the hypothetical questions posed to the VE are not deficient for excluding limitations resulting from Ms. Simon's CVS, and the testimony generated from the hypothetical questions can properly be regarded as substantial evidence.

Further, Ms. Simon argues that the VE was not competent to testify as to the transferability of Ms. Simon's skills. The VE, however, need not be competent to testify as to the transferability of Ms. Simon's skills because Ms. Simon's skills are not relevant to unskilled work. The Social Security regulations do not allow benefits to be denied based on the transferability of skills to unskilled jobs. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d. Cir. 1984) (citing SSR 82–42 § 2(b)). In fact, skills cannot transfer to unskilled work. *Id.* Because the jobs available to Ms. Simon involve unskilled work, the transferability of Ms. Simon's skills is not relevant.[5] Moreover, the ALJ did not use the VE's testimony regarding the transferability of Ms. Simon's skills to conclude that benefits should be denied. For these reasons, the ALJ's finding that other jobs are available to Ms. Simon is supported by substantial evidence.

---

[4] There is no evidence indicating that the VE's method for determining the number of jobs available to Ms. Simon was unreliable or otherwise inappropriate. Therefore, the methods used by the VE do not prevent the VE's testimony from constituting substantial evidence.
[5] It is undisputed that the jobs available to Ms. Simon, as named in the VE's testimony, have a Specific Vocational Preparation (SVP) of 2 under the DOT. Jobs with an SVP of 2 correspond to unskilled work. SSR 00–4p.

## IV. Conclusion

For the reasons discussed above, the Commissioner's decision is **AFFIRMED.**

Dated:   02/24/2016                                                                         s/ Robert B. Kugler
                                                                                      ROBERT B KUGLER
                                                                                      United States District Judge